FILED APR - 5 2006
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

ENTERED APR - 6 2006
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>INLAND GLOBAL MEDICAL GROUP, INC.,<br><br>      Debtor.<br><br>RICHARD K. DIAMOND, CHAPTER 7 TRUSTEE,<br><br>      Plaintiff,<br>v.<br><br>DISNEY, LEDERHAUS & RODRIGUEZ,<br><br>      Defendant. | Case No. RS 02-26263 PC<br><br>Chapter 7<br><br>Adv. No. RS 04-02235 PC<br><br><br><br>**MEMORANDUM DECISION**<br><br><br>Date: March 21, 2006<br>Time: 9:00 a.m.<br>Place: U.S. Bankruptcy Court<br>   Courtroom 303<br>   3420 Twelfth Street<br>   Riverside, CA 92501 |

Plaintiff, Richard K. Diamond, Chapter 7 Trustee ("Diamond") seeks to avoid certain alleged preferential transfers totaling $68,377.37 pursuant to 11 U.S.C. § 547(b). Defendant, Disney, Lederhaus & Rodriguez ("Disney") asserts affirmative defenses to Diamond's preference claims under 11 U.S.C. §§ 547(c)(2) and (4). The court conducted a trial in this adversary proceeding on March 21, 2006, at which Sandor T. Boxer appeared for Diamond and Stephen R. Wade appeared for Disney. At the conclusion of trial, the matter was taken under submission. Having considered the pleadings, evidentiary record,[1] trial briefs and arguments of counsel, the court makes

---

[1] Having considered the Supplemental Declaration of Anna Perez in Lieu of Direct Testimony at Trial and Plaintiff's Supplemental Statement in Response To Supplemental Declaration of Anna Perez in Lieu of Direct Testimony at Trial, the court overrules Diamond's objection to Anna Perez's testimony concerning "various insurance companies or government aid programs" and Diamond's objections to Disney's Exhibits A-1 through A-23, B-1 and B-2. The court sustains Diamond's objection to Disney's Exhibit C. Exhibits A-1 through A-23, B-1 and B-2 are admitted into evidence, and Exhibit C is excluded.

ORIGINAL

the following findings of fact and conclusions of law[2] pursuant to Fed. R. Civ. P. 52, as incorporated into Fed. R. Bankr. P. 7052.

## I. STATEMENT OF FACTS

On October 4, 2002, an involuntary chapter 7 petition was filed against <u>Inland Global Medical Group, Inc.</u> ("Inland Global"), in Case No. RS 02-26263 PC in the United States Bankruptcy Court, Central District of California, Riverside Division. An order for relief under chapter 7 was entered in the case on December 27, 2002. Diamond is the duly elected chapter 7 trustee of the bankruptcy estate of Inland Global, and has standing to pursue the causes of action alleged in the complaint filed in this adversary proceeding on behalf of such estate. At all relevant times, Disney was a medical association doing business in the state of California.

On or about July 8, 2002, Inland Global wrote Check # 70202 in the amount of $11,559.84, payable to Disney dated July 8, 2002. The check was paid or honored on July 25, 2002. On or about August 8, 2002, Inland Global wrote Check # 70838 in the amount of $17,992.52, payable to Disney dated August 8, 2002. The check was paid or honored on August 21, 2002. On or about August 21, 2002, Inland Global wrote Check # 71170 in the amount of $38,825.01, payable to Disney dated August 21, 2002. The check was paid or honored on August 23, 2002.

Neither Diamond nor Disney dispute that each check was a "transfer" of funds belonging to Inland Global within the meaning of the Bankruptcy Code and other applicable laws. Nor do the parties dispute that (a) the subject transfers were made for or on account of antecedent debts owed by Inland Global to Disney before such transfers were made; (b) the subject transfers were made within 90 days before October

---

[2] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

4, 2002 - the date the involuntary petition was filed against Inland Global, and (c) the subject transfers enabled Disney to receive more than it would have received if the case were a case under chapter 7, the subject transfers had not been made, and Disney had received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

## II. DISCUSSION

The court finds that it has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is appropriate in this court under 28 U.S.C. § 1409(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F) and (O).

**A.    Contentions of the Parties.**

The parties do not dispute that the subject transfers constitute preferential transfers by Inland Global to Disney totaling $68,377.37 pursuant to § 547(b). Plaintiff claims that he is entitled to recover the sum of $68,377.37 from Disney pursuant to § 547(b), together with prejudgment interest and costs of court. Disney claims that it provided services on behalf of Inland Global after the subject transfers which constituted "new value" under § 547(c)(4) in the amount of $27,968.84, and that such new value provides a partial defense to Diamond's preference claims. Additionally, Disney claims an affirmative defense under § 547(c)(2), arguing that the transfers were in payment of debts incurred by the debtor in the ordinary course of business, made in the ordinary course of business, and according to ordinary business terms.

**B.    New Value.**

Section 547(c)(4) states that the trustee may not avoid under § 547 a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). To prevail with the new value defense, Disney must show (a) that it gave unsecured new value to or for the benefit of the debtor; (b) after the preferential transfer; and (c) the debtor did not repay the new value by an otherwise unavoidable transfer. Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.), 52 F.3d 228, 231 (9th Cir. 1995). "The 'new value' defense is grounded in the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors." Rodgers v. Schneider (In re Laguna Beach Motors, Inc.), 148 B.R. 322, 324 (9th Cir. BAP 1992), quoting In re Auto-Train Corp., 49 B.R. 605, 612 (D.D.C. 1985), aff'd sub nom., Drabkin v. A.I. Credit Corp., 800 F.2d 1153 (D.C. Cir. 1986).

The defendant in a preferential transfer proceeding has the burden of proving any exceptions to avoidance under § 547(c). 11 U.S.C. § 547(g). See Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.), 184 B.R. 74, 75 (9th Cir. BAP 1995). With respect to § 547(c)(4), creditors have the burden of establishing with specificity the measure of new value given to the debtor in the exchange. See, e.g., Official Unsecured Creditors' Comm. v. Airport Aviation Servs., Inc. (In re Arrow Air, Inc.), 940 F.2d 1463, 1466 (11th Cir. 1991); Creditors' Comm. v. Spada (In re Spada), 903 F.2d 971, 976 (3rd Cir. 1990); Jet Florida, Inc. v. Am. Airlines, Inc. (In re Jet Florida Sys., Inc.), 861 F.2d 1555, 1559 (11th Cir. 1988). Creditors relying on § 547(c)(4) must also prove that the new value has not been repaid by an otherwise unavoidable transfer. See IRFM, 52 F.3d at 231; Nat'l Lumber, 184 B.R. at 81.

In support of its "new value" defense under § 547(c)(4), Disney did not offer into evidence a copy of its contract with Inland Global nor copies of any invoices itemizing the services ostensibly rendered on behalf of Inland Global. Disney's office manager,

Anna Perez ("Perez"), who is responsible for Disney's billing and accounts receivable, testified that she was unable to locate a copy of Disney's contract with Inland Global despite due diligence. Perez did testify, however, that Disney rendered medical services to Inland Global patients on a "fee for service" basis through 2002 pursuant to a written agreement entered into between the parties in 2001. Perez further testified that invoices could not be produced because Disney periodically deletes invoices from its computer system and in lieu thereof, retains a record summary describing "among other things, the date of service, the charge for that service, and the nature of that service."[3]

Exhibits B-1 and B-2 are a summary prepared by Perez of Disney's charges for medical services rendered for the benefit of Inland Global between July 11, 2002 and August 31, 2002. Exhibits B-1 and B-2 were prepared by Perez from the record summary maintained electronically on Disney's computer system, and shows the (a) account number; (b) patient name; (c) date of service; (d) amount billed for the service; (e) amount of co-pay, if any, received by Disney, and (f) balance due for the service. Exhibits B-1 and B-2 do not state the nature of service performed nor whether the treatment was authorized by Inland Global. However, Perez testified that all of the services were performed under the contract with Inland Global. Perez further testified that Disney ceased performing services for Inland Global patients after August 20, 2002.

According to the evidence, Inland Global delivered Check # 70202 in the amount of $11,559.84 to Disney on or about July 8, 2002.[4] Between July 8, 2002 and August 8,

---

[3] Perez also testified that "[a] similar summary is created and maintained in the ordinary course of business on an annual basis to track the monthly amounts owed by insurance companies and governmental aid programs."

[4] The "date of delivery" rule applies to check payments for purposes of § 547(c). Barnhill v. Johnson, 503 U.S. 393, 402 n.9 (1992); Hall-Mark Elec. Corp. v. Sims (In re Lee), 108 F.3d 239, 241 (9th Cir. 1997).

1  2002, Disney continued to perform medical services for the benefit of Inland Global
2  clients at a cost of $67,893.44. On or about August 8, 2002, Inland Global delivered
3  Check # 70838 to Disney in the amount of $17,992.52. After delivery of Check # 70838,
4  Disney continued to render medical services to Inland Global patients until August 20,
5  2002, at a cost of $15,754. After terminating its services to Inland Global patients on
6  August 20, 2002, Inland Global delivered Check # 71170 to Disney in the amount of
7  $38,825.01 on August 21, 2002.

8      Disney has established by a preponderance of the evidence and with a sufficient
9  degree of specificity that it gave new value to Inland Global in the amount of $27,313.84
10  between July 8, 2002 and August 20, 2002. Perez testified that Disney did not receive
11  compensation for such services from Inland Global or any other person, and there is no
12  evidence that such new value was not repaid by an otherwise unavoidable transfer.
13  Accordingly, Disney is entitled to a new value defense in the amount of $27,313.84 to
14  Diamond's preference claims.

15  **C.  Ordinary Course of Business.**

16      Under § 547(c)(2), a trustee may not avoid an otherwise preferential transfer to
17  or for the benefit of a creditor to the extent that such transfer was –

18      (A) in payment of a debt incurred by the debtor in the ordinary course of business
19      or financial affairs of the debtor and the transferee;
20      (B) made in the ordinary course of business or financial affairs of the debtor and
21      the transferee, and
22      (C) made according to ordinary business terms.

23  11 U.S.C. § 547(c)(2). Section 547(c)(2) is comprised of a subjective test and an
24  objective test. See Cocolat, Inc. v. Fisher Dev., Inc. (In re Cocolat, Inc.), 176 B.R. 540,
25  549 (Bankr. N.D. Cal. 1995). The transferee has the burden of proving the defense and
26  must prove each of the three elements by a preponderance of the evidence. Arrow
27

1  Elec., Inc. v. Justus (In re Kaypro), 230 B.R. 400, 404 (9th Cir. BAP 1999), aff'd in part,
2  rev'd in part, 218 F.3d 1070 (9th Cir. 2000).
3        Sections 547(c)(2)(A) & (B), which together form the subjective test, require a
4  creditor to demonstrate that the debt and its payment are ordinary in relation to past
5  practices or a prior course of dealing between the debtor and the creditor. See, e.g.,
6  Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 732 (9th Cir. 1994); Bell
7  Flavors & Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.), 107 B.R. 707, 709 (9th
8  Cir. BAP 1989); Cocolat, 176 B.R. at 549.
9        Section 547(c)(2)(A) focuses on whether the incurrence of debt was ordinary,
10 i.e., whether the debt was incurred by the debtor in the ordinary course of business.
11 See Cocolat, 176 B.R. at 549. Section 547(c)(2)(B) requires the court to examine the
12 following factors to determine if payment of the debt was ordinary in light of past
13 practices between debtor and creditor: (1) the length of time the parties were engaged
14 in the transactions at issue; (2) whether the amount or form of tender differed from past
15 practices; (3) whether the debtor or creditor engaged in any unusual collection or
16 payment activity; and (4) whether the creditor took advantage of the debtor's
17 deteriorating financial condition. See Grand Chevrolet, 25 F.3d at 732; Cocolat, Inc.,
18 176 B.R. at 549.
19       Section 547(c)(2)(C)'s objective test requires a creditor to prove that the
20 payment was ordinary in relation to prevailing business standards. See, e.g., Bank of
21 the West v. Anderson (In re Jan Weilert RV, Inc.), 315 F.3d 1192, 1197 (9th Cir. 2003);
22 In re Food Catering & Housing, Inc., 971 F.2d 396, 398 (9th Cir. 1992). In other words, §
23 547(c)(2)(C)'s objective standard requires proof of "practices common to businesses
24 similarly situated to the debtor and the transferee." Loretto Winery, 107 B.R. at 709. It
25 is not enough to prove what past practices were between the particular creditor and the
26 debtor. Id. The focus of the inquiry is whether the payment practice at issue comports
27

with industry standards. See Jan Weilert, 315 F.3d at 1197. According to the Ninth Circuit:

> [T]he creditor must show that the payment he received was made in accordance with the ordinary business terms in the industry. But this does not mean that the creditor must establish the existence of some single, uniform set of business terms . . . . We conclude that "ordinary business terms" refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of [the ordinary course of business].

Id., quoting In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993). Section 547(c)(2)(C)'s objective test requires consideration of both the creditor's and the debtor's industries, i.e., "the broad range of terms that encompasses the practices employed by those debtors and creditors, including terms that are ordinary for those under financial distress." Jan Weilert, 315 F.3d at 1198 (citations omitted).

In this case, Disney's ordinary course defense is based primarily upon the following testimony from Perez:

> Although payment was due to [Disney] by Inland Global within forty-five (45) days of the rendering of services, Inland Global was habitually late on payments to [Disney]. Attached hereto, marked as Exhibits "A-1 through A-23" and incorporated herein by reference are true and correct summary of [Disney's] Accounts Receivable (Hereinafter "A/R Summary") in 2002. The A/R Summary was obtained through a readout from the computer system detailing the monthly amounts owed by various insurance companies and governmental aid programs in 2002. The 120 day accounts receivable figure is typically the lowest figure in the monthly 2002 summaries. This is due primarily to the fact that Inland Global ordinarily paid for services 120 days after they were rendered. This practice of late payment was not unique to Inland Global. During the periods of 2001 and 2002, several other entities were regularly late in their payments to [Disney] for services rendered. In addition to evidencing the fact that Inland Global had a practice of delaying payment by 120 days, the A/R Summary shows that several other insurers and governmental aid programs did not ordinarily keep their accounts current and that late payments on services rendered was common practice not only with [Disney], but in the medical provider business in California as a whole.

Viewing the evidence in a light most favorable to Disney, the court finds that Disney failed to sustain its burden to establish that the transfer was made in the ordinary course of business and made according to ordinary business terms.

- 8 -

First, Disney's A/R Summary shows that Inland Global was current in April 2002. Even assuming payment by Inland Global "ordinarily" was made 120 days after services were rendered, the fact that Disney obtained a $38,825 check from Inland Global 13 days after receiving payment in August 2002 and one day after terminating all services to Inland Global patients belies the notion that Disney did not engage in any unusual collection or payment activity or take action to minimize its losses.

Secondly, Disney's A/R Summary does not establish that Inland Global's payments to Disney comported with industry standards for purposes of § 547(c)(2)(C). Disney's A/R Summary is incomplete in that it does not include all of Disney's accounts receivable for 2002, but appears to include only one page of the monthly accounts receivable summary for each month in 2002 - the page that identifies Inland Global's account. Disney's A/R Summary also indicates there may have been as many insurers with account balances less than 30 days old as those with balances upwards of 120 days old. Furthermore, Perez did not identify the "several other insurers and governmental aid programs" nor describe the specific payment practices of such entities which formed the basis for her opinion that "late payments on services rendered was common practice . . . in the medical provider business in California as a whole."

Finally, Disney did not offer any expert testimony concerning the credit arrangements between other similarly situated debtors and creditors in the industry nor any expert opinion as to whether Inland Global's payment practices were consistent with what takes place in the industry. See In re Hessco Indus., Inc., 295 B.R. 372, 376 (9th Cir. BAP 2003) (stating that Jan Weilert's considerable relaxation of the burden on preference defendants in proving their affirmative defenses under § 547(c)(2)(C) . . . [does] not relieve them of the requirement to proffer some evidence to sustain that burden"). Based on the foregoing, the court finds that Disney is not entitled to an ordinary course defense against Diamond's preference claims.

## CONCLUSION

For the foregoing reasons, the court will enter judgment awarding the sum of $41,063.53 to Diamond pursuant to § 547(b), together with prejudgment interest from December 21, 2004, to entry of judgment, and costs of court. A separate judgment will be entered consistent with this opinion.

DATED:

APR 0 5 2006

PETER H. CARROLL
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| In re INLAND GLOBAL MEDICAL GROUP, INC., | CHAPTER 7 |
|---|---|
| Debtor. | CASE NUMBER RS 04-02235 PC |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1. You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: MEMORANDUM DECISION

   was entered on *(specify date)*: APR 0 6 2006

2. I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*: APR 0 6 2006

Dated: APR 0 6 2006

JON D. CERETTO
Clerk of the Bankruptcy Court

By: C. Giannmarie
    Deputy Clerk

---

Rev. 1/01  This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.    **F 9021-1.1**

Main Document    Page 12 of 12

Service List

Sandor T. Boxer, Esq.
Law Office of Sandor T. Boxer
12400 Wilshire Blvd., Suite 1300
Los Angeles, CA 90025-1030

Stephen R. Wade, Esq.
Law Offices of Stephen R. Wade
400 N. Mountain Avenue, Suite 214B
Upland, CA 91786